Teralyn Renea Evans – Plaintiff pro se
13605 E. Bulah Ave.
Parlier, CA 93648
(510) 680-8263
teralyn.r@sbcglobal.net



FILED
APR 20 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

NP

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

TERALYN RENEA EVANS,

    **Plaintiff pro se,**

vs.

PRESTON GILMORE individually and in his official capacity as Division Manager for Children and Family Services Bureau; SAVANNAH McKENZIE individually and in her official capacity as Supervisor for Children and Family Services Bureau; MELISSA CONNELLY individually and in her official capacity as Supervisor for Children and Family Service Bureau; DONNA THORESON individually and in her official capacity as Supervisor for Children and Family Services Bureau; CLARENCE JOHNSON individually and in his official capacity as Emergency Response Worker for Children and Family Services Bureau; **RODNEY HARVEY** individually and in his

CASE NO: C15- 1772 DMR

COMPLAINT FOR DAMAGES

(42 U.S.C. § 1983)

(California Civil Code § 51)

DEMAND FOR JURY TRIAL

Complaint - 1

| | |
|---|---|
| 1 | official capacity as Social Worker Intern ) |
| 2 | for Children and Family Services Bureau; ) |
| 3 | **STAN COOPER** individually and in his ) |
| 4 | official capacity as Social Worker for ) |
| 5 | Children and Family Services Bureau; **LINDA**) |
| 6 | **RAY** individually and in her official ) |
| 7 | capacity as Domestic Violence Liaison for ) |
| 8 | Children and Family Services Bureau; ) |
| 9 | **ALICIA WOOD** individual and in her official) |
| 10 | capacity as Eligibility Worker for ) |
| 11 | Children and Family Services Bureau; ) |
| 12 | **CONTRA COSTA COUNTY** a municipal ) |
| 13 | corporation; **MARK GAGAN** individually and ) |
| 14 | in his official capacity as Sergeant for ) |
| 15 | the Richmond Police Department; **GREG** ) |
| 16 | **GIBSON** individually and in his official ) |
| 17 | capacity as Detective for the Richmond ) |
| 18 | Police Department; **DOES** 1-9 inclusive; and) |
| 19 | **CITY OF RICHMOND** a municipal corporation. ) |
| 20 | **Defendants** ) |

## JURISDICTION

1. This action arises under 42 U.S.C. § 1983. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331, 1343(a)(1) & (3), and § 1367(a).

## INTRADISTRICT ASSIGNMENT

2. Venue is proper and convenient in the Northern District of California, Oakland Division pursuant to 28 U.S.C. 1391(b) in that the alleged claims arose in the City of Richmond, State of California.

## PARTIES

3. Plaintiff, Teralyn Renea Evans, is a competent adult and is a person with standing to bring this action for the violation of her constitutional rights under 42 U.S.C. § 1983. Plaintiff, Teralyn Renea Evans, does hereby bring this action on her own behalf.

4. Plaintiff, Teralyn Renea Evans, is of African American descent.

5. Defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Clarence Johnson, Rodney Harvey, Stan Cooper, Linda Ray and Alicia Wood were at all times relevant to this action as officers of the Contra Costa County Children and Family Services Bureau, a Division of the Contra Costa County Department of Health and Human Services. All defendants identified in this Paragraph are being sued in their individual and official capacities.

6. Defendant Contra Costa County is, and at all times relevant to this action was, a municipal corporation duly organized and existing under the laws of the State of California.

7. Defendants Mark Gagan and Greg Gibson were at all times relevant to this action officers of the Richmond City Police Department. All defendants identified in this Paragraph are being sued in their individual and official capacities.

8. Defendants DOES 1-9 are unknown by true name and/or capacities. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs will allege the Defendants DOES 1-9 and each of them are legally responsible for their intentional

and unreasonable violation of and reckless disregard for the Constitutional and statutory rights of the Plaintiffs.

9. Defendant CITY OF RICHMOND is, and at all times relevant to this action was, a municipal corporation duly organized and existing under the laws of the State of California.

## STATEMENTS OF FACTS

10. On June 26, 2001 Detective Sandefur of the Los Angeles Police Department forwarded a report of child abuse to Detective Griffin of the Richmond Police Department. The eldest sister of Charles Evans II, father of the plaintiff Teralyn Renea Evans, Charlene Robertson, and her friend Winifred Beavers, filed the report of abuse on June 22, 2001. The alleged abuse was reported to have occurred at the residence of the Plaintiffs at 546 17th Street in the city of Richmond, prior to June 20, 2001. The abuse was alleged to have been committed by Charles Evans II and inflicted on his nephew, Tyree Robertson, who is now living in Los Angeles. The Richmond Police Department prior to January 29, 2002 conducted no investigation on the report of abuse.

11. On August 8, 2001 the Contra Costa County Children and Family Services Bureau received a report of child and spousal abuse from Teresa Foley, Ph.D. a mandated reporter for the Los Angeles Police Department Behavioral Science Service Unit. The report alleged General Neglect by Nicole Lynnette Evans, mother of plaintiff Teralyn Renea Evans, and physical abuse by Charles Evans II to their three children Teralyn, Henry, and Armae Evans. The report alleged that Charles Evans II used his religion as an excuse to inflict abuse on his children and to control his wife. The report was immediately assigned to an Emergency Response Social Worker, Clarence Johnson, and investigated by a home visit on August 10, 2001. The Emergency Response Worker, Clarence Johnson, determined the report of abuse to be unfounded and noted no signs of abuse or neglect by the parents of the plaintiff.

12. On August 23, 2001 a disposition committee meeting held by defendants Preston Gilmore, Savannah McKenzie, and Melissa Connelly rejected the recommendation of the Emergency Response Worker, Clarence Johnson, to close the case based on no signs of abuse or neglect to Teralyn, Henry, and Armae Evans. Defendants Preston Gilmore, Savannah McKenzie, and Melissa Connelly instructed defendant Clarence Johnson to implement a Voluntary Family Maintenance plan.

13. The decision to implement the Voluntary Family Maintenance plan was based solely on negative stereotypes associated with the race and religion of the Plaintiff's family. The Emergency Response Worker, Clarence Johnson, reported Nicole Lynnette Evans to be "old school" due to her religious beliefs. The Disposition Committee, formed on August 23, 2001, concluded that Charles Evans II was "a loose cannon", labeled Charles Evans II as "uncooperative" and used any information gathered to portray Charles Evans II as angry and violent.

14. On August 30, 2001 defendant Clarence Johnson visited the Plaintiff's family's residence to gain the signature of Charles Evans II on the Voluntary Family Maintenance plan. Chalres Evans II informed defendant Clarence Johnson that he did not agree to any plan that would validate the false allegations made by family members in Los Angeles. Defendant Clarence Johnson would not accept Charles Evans II's refusal of the Voluntary plan and inferred that it would make the investigation of child abuse by the Los Angeles Police Department more intense if Charles Evans II did not cooperate. Charles Evans II finally agreed to sign the Voluntary Family Maintenance plan.

15. On January 29, 2002, defendant Rodney Harvey visited the Plaintiff's family's residence, for the third time, to drop off a copy of the Voluntary Family Maintenance plan which was promised to Charles Evans II on August 30, 2001. After delivering the document, defendant Rodney Harvey requested to see Teralyn, Henry, and Armae Evans. Charles Evans II denied the request due to his complete disgust with the handling of his case, and the recent birth of Charles Thomas Evans fifteen days prior. Charles Evans II spoke to defendant Donna Thoreson who indicated no possible resolution other than filing a petition with the Family Court within the next two weeks. No further contact or petition occurred prior to February 14, 2002.

16. From January 29, 2002 to February 14, 2002 defendants Donna Thoreson and Rodney Harvey began to gather information and solicit the aid of other government employees to create a plan that would allow them to separate the children from the parents under the color of State law. At no time were the children in any danger of any sort except for the ill intentions of the defendants named in this Paragraph.

17. On February 14, 2002, defendants Rodney Harvey and Stan Cooper received orders from their supervisors to remove Teralyn, Henry, and Armae Evans from their residence and custody of their natural parents Charles Evans II and Nicole Lynnette Evans. This was the culmination of the conspiracy that began on January 29, 2002 designed for no reason by the defendants other than to inflict their will upon the Plaintiff's family for their religious beliefs and assumed negative racial characteristics. No legal authority was sought or obtained to carry out this plan.

18. After receiving instructions to remove the children, Teralyn, Henry, and Armae Evans, defendant Rodney Harvey contacted defendant Greg Gibson at the Richmond Police Department. Defendant Greg Gibson requested assistance from defendant Mark Gagan in order to remove the children, Teralyn, Henry, and Armae Evans from their home and to arrest Charles Evans II. Defendant Mark Gagan continued the plan by meeting with defendants Rodney Harvey and Stan Cooper at the Hall of Justice in the City of Richmond. During this meeting, the defendants signed documents placing the children under protective custody without court authority, probably cause, or exigent circumstance.

19. At approximately 2:00 PM on February 14, 2002, defendants Mark Gagan, DOES 1-9m Rodney Harvey, and Stan Cooper entered the Plaintiff's family's residence, searched the entire premises, and removed the four Evans children, Teralyn, Henry, Armae, and infant Charles Thomas Evans. Defendant DOES 1-8 were large, armed, Black male police officers; DOE 9 was an armed, White female police officer. Charles Evans II was at his work location

with the Internal Revenue Service located in Oakland, California. Plaintiff Teralyn Renea Evans was subjected to undue emotional distress caused by the actions of the defendants mentioned in this Paragraph. The Plaintiff was forced to leave with a group of strangers who she only knew upset her mother and disrupted their daily activities.

20. After being removed from her home, Teralyn Renea Evans was transported with her siblings to a clinic where the children, Teralyn, Henry, Armae, and Charles Thomas Evans, were given unauthorized medical attention and exam. During this time, defendant Rodney Harvey attempted to bribe the children into behaving when they were clearly unhappy and frightened. Defendant Rodney Harvey gave Henry Evans, age 3, a chocolate bar and told him to "be a big boy" to encourage him not to cry. Teralyn was not allowed to console her siblings as she generally would have as the oldest child.

21. During the seizure of the children, Nicole Lynnette Evans was able to telephone her mother, Mrs. Lerline Gandy, who lived only lived seven minutes away. Mrs. Gandy, who is a well-respected, well-known resident of the city of Richmond, requested that the children, especially the infant Charles Thomas Evans, be placed with her. Her request was denied with no consideration of her ability to meet the needs of the children until the matter could be resolved.

22. Plaintiff Teralyn Renea Evans, age 5, was placed into a home with at least four other foster children of different ages. Upon her arrival at her placement house, Teralyn was not allowed to contact her mother or her siblings. Defendant Rodney Harvey and his associates did not allow Teralyn to console her siblings before leaving them and refused to explain what was going on. Teralyn's foster guardian immediately met her with hostility. She was not allowed to fully unpack her bag or fraternize with the other children. Teralyn was told to "get over" her crying. The first night of her stay, Teralyn was not allowed to use the tapes that her mother packed for her to go to sleep to, nor was she allowed to sleep with the stuffed animal that she slept with every night.

23. During her time in the foster home, Teralyn was mistreated by both her foster guardian and the other foster children. She was forced to eat foods that she did not eat at home and was punished when she refused to finish meals that she told her foster guardian she would not eat. In one instance, her foster guardian fed her unsweetened Cheerio's with bananas. Teralyn already had a dislike of bananas and could not stomach the meal. Her foster guardian left the food on the counter and told her she would not be fed anything else until she finished eating it. Her foster guardian proceeded to give the other children Pop-Tarts and other snacks that Teralyn could not have until she ate the cereal, which had been left out for over an hour. When Teralyn tried to finish the cereal, she vomited in the bathroom and had to clean the toilet herself.

24. Teralyn was only allowed to talk to her father, Charles Evans II, over the phone once during her placement in the foster home. The call was short and when it ended her foster guardian berated her about crying. She was allowed to visit her family once in a monitored room for an hour. She was completely isolated from family and friends while placed in the foster home, and surrounded by foreign and scary experiences which left her emotionally and psychologically disturbed.

Complaint - 6

25. On March 4, 2002, defendant Linda Ray visited Nicole Lynnette Evans to conduct an assessment of the presence of domestic abuse by Charles Evans II. During this meeting, defendant Linda Ray did everything in her power to manipulate the trust and intimate information freely provided to her to further the violations and damage inflicted upon the Plaintiff's family. Defendant Linda Ray intentionally and recklessly violated the most sacred, cherished, and intimate details of the union between Nicole Lynnette Evans and Charles Evans II. Defendant Linda Ray went out of her way to portray Nicole Lynnette Evans as an abused, ignorant, and unfit mother that would willingly subject her children to an abusive environment. Defendant Linda Ray made a written report indicating that Charles Evans II was angry, violent, and controlling based on her own negative view of men, and allowed these beliefs to guide her complete disregard for the reputation, feelings, or safety of the Plaintiff's family.

26. On April 24, 2002, the Family Court granted the Plaintiff's parents' Motion to Dismiss Petition filed by the Children and Family Services Bureau.

27. On May 5, 2002, defendant Alicia Wood requested the social security card for Charles Thomas Evans. Defendant Alicia Wood provided false information to the Social Security Administration to gain private information about Charles Thomas Evans. This information was intentionally obtained with no legal authority. Defendant Alicia Wood repeatedly gave false information to Charles Evans II and Nicole Lynnette Evans when they inquired about the status of the case files she maintained on the children, Teralyn, Henry, Armae, and Charles Thomas Evans.

28. On May 6, 2002, defendant Alicia Wood requested the social security card for Armae Nicole Evans. Defendant Alicia Wood provided false information to the Social Security Administration to gain private information about Armae Nicole Evans. This information was intentionally obtained with no legal authority. Defendant Alicia Wood repeatedly gave false information to Charles Evans II and Nicole Lynnette Evans when they inquired about the status of the case files she maintained on the children, Teralyn, Henry, Armae, and Charles Thomas Evans.

29. On or about July 19, 2002, the Deputy District Attorney issued a Decision Not To Issue Complaint against Charles Evans II stating that "Richmond Police Department developed not only a motive to lie by [Charlene Robertson and Winifred Beavers], but also evidence of injury [to Tyree Robertson] came from another source. Unfounded report of abuse".

30. Each of the above paragraphs is incorporated by reference into each of the following causes of action.

# FIRST CLAIM FOR RELIEF

(42 U.S.C. § 1983)

(VIOLATIONS OF CIVIL RIGHT TO SECURITY IN PERSONS AND HOUSES)

31. Defendants acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from her parents. These actions were committed with complete disregard for the constitutional provisions secured to all citizens of the United States, including the Plaintiff and her family.

32. By removing Teralyn Renea Evans from her residence without court authority, probable cause, or exigent circumstance, defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Rodney Harvey, Stan Cooper, Mark Gagan, DOES 1-9, and Greg Gibson, individually and/or while acting in concert with one another, violated the rights secured to the Plaintiff by the Fourth Amendment of the United States Constitution.

33. By allowing defendants to act under color of law, policy, practice, or custom and to carry out and be exonerated or justified in such actions, defendants Contra Costa County and City of Richmond violated the rights secured by the Fourth Amendment of the United States Constitution.

Wherefore, plaintiff prays judgment as set forth herein.

# SECOND CLAIM FOR RELIEF

(42 U.S.C. § 1983)

(VIOLATIONS OF CIVIL RIGHT TO DUE PROCESS OF LAW)

34. Defendants acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from her parents. These actions were committed with complete disregard for the constitutional provisions secured to all United States Citizens, including the Plaintiff.

35. By removing Teralyn Renea Evans from her residence without court authority, probable cause, or exigent circumstance, defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Rodney Harvey, Stan Cooper, Mark Gagan, DOES 1-9, and Greg Gibson, individually and/or while acting in concert with one another, violated the rights secured to the Plaintiff by the Fourteenth Amendment of the United States Constitution.

36. By allowing defendants to act under color of law, policy, practice, or custom and to carry out and be exonerated or justified in such actions, defendants Contra Costa County and City of Richmond violated the rights secured by the Fourteenth Amendment of the United States Constitution.

Wherefore, plaintiff prays judgment as set forth herein.

### THIRD CLAIM FOR RELIEF

(42 U.S.C. § 1981)

(VIOLATIONS OF CIVIL RIGHT TO EQUAL RIGHTS UNDER THE LAW)

37. Defendants acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from her parents. These actions were committed with complete disregard for the constitutional provisions secured to all United States citizens, including the Plaintiff.

38. By committing the acts alleged in this Complaint, defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Clarence Johnson, and Rodney Harvey deprived the Plaintiff of her equal rights of, but not limited to, the following:

a. The right to make and enforce contracts,
b. The right to receive full and equal benefit of all laws,
c. The right to protection from impairment of rights under color of State law.

Wherefore, plaintiff prays judgment as set forth herein.

### FOURTH CLAIM FOR RELIEF

(42 U.S.C. § 1985)

(CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS)

39. Defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Rodney Harvey, Stan Cooper, Mark Gagan, and Greg Gibson acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from her parents.

40. The ill intention of the named defendants was the result of their willingness to accept and promote false information based on racial and religious characteristics of the Plaintiff's family. Despite the numerous attempts by the Plaintiff's family to cooperate, and their pleading with defendants to discontinue their actions, the defendants persisted with the alleged deprivations.

Wherefore, plaintiff prays judgment as set forth herein.

## FIFTH CLAIM FOR RELIEF

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

41. By the conduct alleged above, the defendants intentionally or in reckless disregard of the consequences to the Plaintiff and the Plaintiff's family, proximately caused the Plaintiff's family to suffer great emotional distress and trauma by forcibly separating the Plaintiff's family unit.

42. In doing the foregoing wrongful acts, the defendants, and each of them, acted in reckless and cruel disregard for the constitutional and statutory rights of the Plaintiff and the Plaintiff's family. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious.

Wherefore, plaintiff prays judgment as set forth herein.

## FIFTH CLAIM FOR RELIEF

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

43. By the conduct alleged above, the defendants failed to provide the Plaintiff's family with the required benefits and provisions of California State law, Richmond Police Department's Standard Operating Procedures, and Department of Social Services Policies and Procedures. The Plaintiff and the Plaintiff's family suffered great emotional distress and trauma by the wrongful acts and omissions of the defendants.

44. As a direct and proximate result of the negligence of the defendants, and each of them, the Plaintiff and the Plaintiff's family endured and will continue to endure the great injury to the mind and body caused by being stripped of protected rights by individuals entrusted to protect them. The distrust and fear of living in an environment that justifies such activity is painful and ever present.

WHEREFORE, plaintiff prays judgment as set forth as follows on all causes of action:

A.  Compensatory general damages in the amount of forty million dollars ($40,000,000);

B.  Punitive damages in the amount of two million dollars ($2,000,000) for each defendant sued in their individual capacity;

C.  Injunctive Relief;

D.  Declaratory Relief and

E.  Such further relief that the Court deems just and proper.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

53. Pursuant to General Order No. 48, the undersigned certifies that as of this date there is no such interest to report.

## JURY TRIAL DEMAND

54. Pursuant To Civil L.R. 3-6 plaintiffs preserve the right to a jury trial.

DATED April 17, 2015

_____
TERALYN RENEA EVANS
Plaintiff pro se