UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERALYN RENEA EVANS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PRESTON GILMORE, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-01772-MEJ<br><br>**ORDER RE: MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 20, 22 |

## INTRODUCTION

Pro se Plaintiff Teralyn Renea Evans ("Plaintiff") brings this case against Defendants Contra Costa County (the "County"), the City of Richmond (the "City"), and a number of their employees based on the removal of Plaintiff from her parents' custody and temporary placement in foster care in 2002. Pending before the Court are the County's and the City's Motions to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 20 (County Mot.); Dkt. No. 22 (City Mot.). Plaintiff filed an Opposition to the County's Motion on July 13, 2015 (Dkt. No. 28), and to the City's Motion on July 14, 2015 (Dkt. No. 29). The County and the City filed Replies on July 20, 2015 (Dkt. No. 30, County Reply; Dkt. No. 32, City Reply). The Court finds these matters suitable for disposition without oral argument and VACATES the August 6, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** the County's Motion and **DENIES** the City's Motion for the reasons set forth below.

## BACKGROUND

On August 8, 2001, the County's Children and Family Services Bureau received a report of child and spousal abuse from Teresa Foley, Ph.D. of the Los Angeles Police Department

Behavioral Services Unit. Compl. ¶ 11, Dkt. No. 1. The report alleged general neglect by Plaintiff's mother, Nicole Lynnette Evans, and that her father, Charles Evans II, used his religion as an excuse to inflict abuse on his children and to control his wife. *Id.* ¶¶ 10-11. The report prompted Defendant Clarence Johnson, an Emergency Response Social Worker, to investigate the Evans family, after which he determined the report of abuse to be "unfounded." *Id.* ¶ 11.

On August 23, 2001, Defendants Preston Gilmore, Savannah McKenzie, and Melissa Connelly, as officers of the County's Children and Family Services Bureau, held a disposition committee meeting in which they rejected Johnson's recommendations. *Id.* ¶¶ 5, 12. At this meeting, Gilmore, McKenzie, and Connelly instructed Johnson to implement a Voluntary Family Maintenance Plan ("VFMP"). *Id.* Plaintiff claims that the decision to implement the VFMP was unfounded and based on "negative stereotypes associated with race and religion." *Id.* ¶ 13.

On August 30, 2001, Johnson went by the Evans' residence with the VFMP document. *Id.* ¶ 14. Charles Evans II did not agree to the plan, claiming it included false allegations, but he eventually signed it after Johnson inferred that refusal to cooperate would make the investigation of child abuse more intense. *Id.*

On January 29, 2002, Defendant Rodney Harvey, a social work intern, went to the Evans' residence to deliver a copy of the VFMP. *Id.* ¶ 15. He requested to see Plaintiff, but her father denied the request "due to his complete disgust with the handling of his case." *Id.* From January 29 to February 14, 2002, Harvey and Defendant Donna Thoreson (another employee of the County's Children and Family Services Bureau) "began to gather information and solicit the aid of other government employees to create a plan that would allow them to separate the children from the parents under the color of State law." *Id.* ¶¶ 5, 16.

On February 14, 2002, Harvey and Defendant Stan Cooper (another social worker) received orders to remove Plaintiff and the other three Evans children from the Evans' residence. *Id.* ¶¶ 5, 17. At approximately 2:00 p.m., Defendant Sergeant Mark Gagan and nine other officers from the Richmond Police Department met with Harvey and Cooper and entered the Evans' residence, searched the entire premises, and removed the four Evans children. *Id.* ¶ 19. Plaintiff alleges the situation subjected her to undue emotional distress as she "was forced to leave with a

group of strangers who she only knew upset her mother and disrupted their daily lives." *Id.* Plaintiff was placed in a foster home, where she was alleges she was mistreated by both her foster guardian and other foster children. *Id.* ¶¶ 22-23. While in the foster home, Plaintiff was "completely isolated from family and friends" and "surrounded by foreign and scary experiences which left her emotionally and psychologically disturbed." *Id.* ¶ 24. Plaintiff claims that the decision to remove the children was based on a "conspiracy . . . designed for no reason by the defendants other than to inflict their will upon the Plaintiff's family for their religious beliefs and assumed negative racial characteristics." *Id.* ¶ 17.

On March 4, 2002, Defendant Linda Ray, a Domestic Violence Liaison for the County Children and Family Bureau, visited Plaintiff's mother and assessed the presence of domestic abuse. *Id.* ¶ 25. Plaintiff alleges Ray "made a written report indicating that Charles Evans II was angry, violent and controlling based on her own negative view of men, and allowed these beliefs to guide her complete disregard for the reputation, feelings, or safety of the Plaintiff's family." *Id.*

On April 24, 2002, the Family Court granted Plaintiff's parents' Motion to Dismiss the Petition filed by the Children Family Services Bureau, and on July 19, 2002, the Deputy District Attorney issued a "Decision Not to Issue Complaint against Charles Evans II." *Id.* ¶¶ 26, 29.

On April 20, 2015, Plaintiff filed the present Complaint. Dkt. No. 1. Plaintiff names twelve defendants and brings six causes of action against all of them: (1) "Violations of Civil Right to Security in Persons and Houses" under 42 U.S.C. § 1983; (2) "Violations of Civil Right to Due Process of Law" under 42 U.S.C. § 1983; (3) "Violations of Civil Right to Equal Rights under the Law" under 42 U.S.C. § 1981; (4) "Conspiracy to Interfere with Civil Rights" under 42 U.S.C. § 1985; (5) Intentional Infliction of Emotional Distress; and (6) Negligent Infliction of Emotional Distress.

Previously, on February 14, 2003, Plaintiff's parents filed a nearly identical lawsuit arising out of the incident in question and containing the same causes of action. *See* Compl. in *Evans, et al. v. Gilmore, et. al.*, C-03-643 MEJ (attached as Ex. B to the Declaration of Noah Blechman,

3

Dkt. No. 20-1).[1]  In that suit, Plaintiff's parents stated that they sued on behalf of their daughter: "Plaintiff, Teralyn Renea Evans, is the minor daughter of Plaintiffs Nicole Lynnette Evans and Charles Evans II, and is a person with standing to bring this action for the violations of her constitutional rights under 42 U.S.C. § 1983.  Plaintiff, Teralyn Renea Evans, by and through her natural guardian, Charles Evans II, does hereby bring this action on her own behalf."  *Id.* ¶ 6. Plaintiff's present suit is identical to the lawsuit her parents filed in 2003, with the exact wording and the exact causes of action against the same defendants, (minus two causes of action in the parents' lawsuit).  The previous lawsuit was settled and dismissed on May 24, 2014.  *See Order Dismissing Case*, C-03-643 MEJ, Dkt. No. 54.

The County filed its current Motion to Dismiss on June 29, 2015.  It argues Plaintiff's claims are barred by the doctrine of res judicata and her state law claims are time barred under California Government Code section 911.  County Mot. at 1.

The City also filed its Motion on June 29, 2015.  It argues Plaintiff's Second Claim for Relief ("Violations of Civil Right to Due Process of Law") must be dismissed because the Complaint does not allege facts sufficient to show that the conduct of the Richmond police officers "shocks the conscience."  City Mot. at 1.  It further argues the Fifth (Intentional Infliction of Emotional Distress) and Sixth (Negligent Infliction of Emotional Distress) Claims for Relief must be dismissed as to the City because public entities are not liable for common law torts under California Government Code section 815(a).  *Id.*

## LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted

---

[1] The Court takes judicial notice of the Complaint in the C-03-643 case.  *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court may take judicial notice of court documents already in the public record).

4

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

5

1 prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

2 amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing

3 *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.   County's Motion**

1.   Res Judicata

Because Plaintiff's parents' named her as a plaintiff in the 2003 action, and the claims in that case were identical to the present Complaint, the County argues she should be barred from re-litigating the same causes of action under the doctrine of res judicata. County Mot. at 5-6. Plaintiff, however, argues she was a minor with no legal representation at the time the actions alleged in the Complaint were committed against her and thus had no reasonable ability to pursue action against the Defendants in the previous case. Pl.'s Opp'n to County Mot. at 4. Plaintiff notes that her parents were aware of the actions committed against her and attempted to bring action on her behalf, but they were proceeding pro se and thus could not represent her. *Id.*

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.* "The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (citation omitted).

Here, the Court concludes that the allegations in both complaints clearly arise from the same transactional nucleus of facts. In fact, the exact wording and the exact causes of actions (minus two causes of actions in the parents' lawsuit) are presented in both cases. Further, the previous lawsuit was settled and dismissed, which acts as a final judgment on the merits. *See Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902-03 (9th Cir. 2001) ("A judicially approved settlement agreement is considered a final judgment on the merits."); *Ford-Clifton v. Dep't of Veterans*

*Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011) ("It is widely agreed that an earlier dismissal based on a settlement agreement constitutes a final judgment on the merits in a res judicata analysis.").

However, although Plaintiff's parents named her as a plaintiff in the previous action, as pro se litigants, they were not entitled to represent their children. "It is well established that the privilege to represent oneself pro se provided by [28 U.S.C.] § 1654 is personal to the litigant and does not extend to other parties or entities." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (citing *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966)). Thus, "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." *Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997). There is no dispute that Plaintiff was a minor at the time her parents filed the previous lawsuit. Thus, since no attorney represented Plaintiff's interests in that case, the Court finds that Plaintiff was not a party to the previous lawsuit.

As to whether there was privity, the concept of privity "is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881 (9th Cir. 1997) (quotation marks and citation omitted). Although privity was originally reserved for specific relationships such as indemnitors and indemnitees, "[r]ecent cases apply the privity concept in a much more flexible manner . . . and courts have found the existence of privity in an array of disparate circumstances summarized under the heading of 'virtual representation.'" *Kourtis v. Cameron*, 419 F.3d 989, 996 (9th Cir. 2005).

Familial relationship does not necessarily result in privity, although it is a factor in determining the preclusive effects of a prior judgment. *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996) (citation omitted). In *Trevino*, the Court held that a child who filed an action seeking punitive damages as the result of the killing of her father was in privity with her grandmother, who earlier sued concerning the same events, because the grandmother had a "tremendous incentive" to recover punitive damages. *Id.* at 916, 924. The court found that privity can exist where a party to a pending action has "sufficiently similar interests" to a non-party that litigated the same issue in a prior action. *Id.* at 924. However, *Trevino* addressed only the daughter's punitive damages claim,

7

finding it "identical" in both cases because punitive damages focus on the conduct to be deterred rather than the violation of an individual's rights. *Id.* at 923. The court "recognize[d] that 'a child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest.'" *Id.* (quoting *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir.), *cert. denied*, 484 U.S. 935 (1987)). Thus, although the court did not permit the daughter's punitive damages claim to go forward, it noted that the daughter's liberty interest in her relationship with her father is a distinct violation that could be addressed through compensatory rather than punitive damages. *Id.*

Here, Plaintiff's Complaint seeks not just punitive damages, but focuses on Defendants' actions and the resulting depravations and injuries she suffered. Plaintiff seeks compensatory and punitive damages, and injunctive and declaratory relief. Further, as noted above, a parent cannot bring an action on behalf of a minor child without a lawyer. *Johns*, 114 F.3d at 877. Thus, although there is a familial relationship between Plaintiff and her parents, the Court cannot find as a matter of law that the interests of Plaintiff and the interests of her parents are so similar that her parents "virtually represented" her in the prior litigation.

In its Reply, the County cites to *Roberts v. Jefferson County*, 1999 WL 1442334 (D. Or. Oct. 5, 1999). In that case, parents filed a civil complaint in 1993, entered into a settlement agreement with the defendants, and the case was dismissed in 1994. *Id.* at *1-2. The parents filed a second case in 1998, this time naming their children as plaintiffs. *Id.* at *2. However, the court found that any claims in the 1998 case which could have been raised in 1993 were barred by the doctrine of res judicata, including any claims brought by the children. *Id.* at *4. Although the plaintiffs argued res judicata did not apply because the children were not parties to the 1993 lawsuit, the court held: "Plaintiffs fail to realize it is not only a matter as to whether the claims were raised, but rather if the claims could have been raised. . . . If two parties are so closely aligned in interest that one is the virtual representative of the other, they are in privity." *Id.* As the parents of the minor children brought the first lawsuit, the court found that privity existed. *Id.*

The Court declines to follow the reasoning in *Roberts*. As noted above, the Ninth Circuit has found that familial relationship does not necessarily result in privity, although it is a factor

8

1  courts consider. *Trevino*, 99 F.3d at 924.  Although the *Roberts* court found that "[a]s the parents
2  and step-parent of the minor children in this lawsuit, privity exists," it provided no legal authority
3  in support of this blanket statement.  In fact, the *Roberts* court does not address *Trevino*, even
4  though it was decided three years earlier.  Further, the only authority the *Roberts* court provides as
5  part of its privity analysis is *Nordhorn v. Ladish Company, Inc.*, 9 F.3d 1402 (9th Cir. 1993), a
6  case which does not address privity between family members but instead involved companies in a
7  breach of contract dispute.  *Id.* at 1404.  In *Nordhorn*, the court found that the claims asserted by
8  Nordhorn did not involve the same defendants as those parties Nordhorn sued in a prior case, even
9  though the defendant companies in both cases could be considered related.  *Id.* at 1406.  Beyond
10 the court's general statement "that when two parties are so closely aligned in interest that one is
11 the virtual representative of the other, a claim by or against one will serve to bar the same claim by
12 or against the other," *id.* at 1405, *Nordhorn* provides no support for the court's finding in *Roberts*.
13      As the County has failed to establish privity between Plaintiff and her parents, the Court
14 finds that all the elements of res judicata are not present, and the Court therefore **DENIES** the
15 County's Motion on this ground.
16      2.     <u>California Government Code section 911.2</u>
17      The County also argues Plaintiff's state law emotional distress claims are time barred
18 under California Government Code section 911.2, as her allegations all concern events that
19 occurred in 2002.  County Mot. at 6.  In response, Plaintiff argues her claims are timely because
20 she filed an administrative claim with the County Board of Supervisors on her own behalf on
21 September 4, 2014, within six months of reaching the age of majority.  Opp'n at 4.
22      When adjudicating a supplemental state law claim, federal courts must apply state
23 substantive law.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Under the
24 California Tort Claims Act, Cal. Gov't Code § 900, et seq., a claim for personal injury must be
25 presented, in the form of a written claim, to the government entity alleged to have caused the
26 injury within six months of the injury.  *See* Cal. Gov't Code §§ 911.2, 945.4 ("No suit for money
27 or damages may be brought against a public entity on a cause of action for which a claim is
28 required to be presented . . . until a written claim therefor has been presented to the public entity

and has been acted upon."); *see also Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 215-16 (2007). Failure to allege facts demonstrating or excusing compliance with the claim presentation requirement is grounds for dismissal of a plaintiff's state law tort claims. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1245 (2004).

Plaintiff alleges that she was removed from her parents' home in 2002, yet she did not file an administrative claim until September 4, 2014. Compl. ¶ 19; Opp'n at 4. As such, her state law claims appear to be time barred. And while an exception to the statute of limitations exists allowing state law claims to be tolled due to minority status pursuant to California Code of Civil Procedure section 352(a),[2] under section 352(b),[3] a plaintiff's minority status does not toll claims that must be filed under California's Tort Claims Act. California Government Code sections 905 and 905.2 provide that "all claims for money or damages against" local public entities and the state must be presented except those specifically excluded. Here, Plaintiff's state law claims for intentional and negligent infliction of emotional distress must be presented under the Tort Claims Act since they are for "money or damages" and not specifically excluded. *See Doe By & Through Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1570 n.7 (N.D. Cal. 1993) (finding the plaintiff's intentional and negligent infliction of emotional distress claims were not tolled due to plaintiff's minority). As Plaintiff's minority status does not toll the statute of limitations under California's Tort Claims Act, the issue is whether Plaintiff's claim is somehow otherwise subject to tolling or delayed accrual.

The accrual date for presenting a government tort claim is determined by the rules applicable to determining when any ordinary cause of action accrues. Cal. Gov't Code § 901. That date may be postponed under the delayed discovery doctrine. *K.J. v. Arcadia Unified Sch.*

---

[2] "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or lacking the legal capacity to make decisions, the time of the disability is not part of the time limited for the commencement of the action." Cal. Civ. Proc. Code § 352(a).

[3] "This section shall not apply to an action against a public entity or public employee upon a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) or Chapter 2 (commencing with Section 910) of Part 3, or Chapter 3 (commencing with Section 950) of Part 4, of Division 3.6 of Title 1 of the Government Code." *Id.* § 352(b).

1 *Dist.*, 172 Cal. App. 4th 1229, 1233 (2009), *as modified* (May 5, 2009).  Under this doctrine, a

2 cause of action does not accrue until the plaintiff discovers, or has reason to discover, the cause of

3 action.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).  "A plaintiff has reason to

4 discover a cause of action when he or she has reason to at least suspect a factual basis for its

5 elements.  Suspicion of one or more of the elements, coupled with knowledge of any remaining

6 elements, will generally trigger the applicable limitations period."  *S.M. v. L.A. Unified Sch. Dist.*,

7 184 Cal. App. 4th 712, 717 (2010) (citing *Fox*, 35 Cal. 4th at 807).  "This refers to the 'generic'

8 elements of wrongdoing, causation, and harm and does not require a hypertechnical approach."

9 *Id.*  Instead, courts "look to whether the plaintiffs have reason to at least suspect that a type of

10 wrongdoing has injured them."  *Id.* (citing *Fox*, 35 Cal. 4th at 807).

11 In this case, there is no dispute that Plaintiff was a young child when Defendants removed

12 her from her parents' custody.  Compl. ¶ 19.  She alleges she "was subjected to undue emotional

13 distress caused by the actions of the defendants" as she "was forced to leave with a group of

14 strangers who she only knew upset her mother and disrupted their daily activities."  *Id.*  She

15 further alleges she was "completely isolated from family and friends," and "surrounded by foreign

16 and scary experiences which left her emotionally and psychologically disturbed" during her time

17 in foster care.  *Id.* ¶ 24.  Based on these allegations, Plaintiff's emotional distress claims accrued at

18 the time she was removed from her parents' home and placed in foster care.  *See V.C. v. L.A.*

19 *Unified Sch. Dist.*, 139 Cal. App. 4th 499, 515-16 (2006) (where plaintiff was allegedly molested

20 by her teacher between the ages of 11 and 13, district's demurrer to the complaint was sustained

21 without leave to amend because the plaintiff did not file a tort claim until more than a year after

22 the molestations ended); *S.M.*, 184 Cal. App. 4th at 720-21 (delayed discovery doctrine did not

23 apply where plaintiff admitted conduct made her scared and nervous, and therefore "knew the

24 generic elements of her claim—that she had been injured by McMurray's wrongdoing."); *Fox*, 35

25 Cal. 4th at 807 (cause of action accrues when plaintiff at least suspects that a type of wrongdoing

26 has injured him or her).

27 Further, Plaintiff's parents were clearly aware of her claims, having filed their own lawsuit

28 in 2003 based on the same causes of action, arising out of the same incident, in which they

attempted to name her as a plaintiff. *See* Blechman Decl., Ex. B at ¶ 6. Thus, even assuming Plaintiff lacked a real awareness that the removal from her parents' home was "wrong," her cause of action for personal injuries accrued, at the latest, when her parents filed suit. *J.J. v. Cty. of San Diego*, 223 Cal. App. 4th 1214, 1224-25 (2014), *as modified on denial of reh'g* (Mar. 7, 2014) (concluding that plaintiff's claim was untimely, even if the delayed discovery rule applied, where parents were aware of the "generic" elements of wrongdoing more than six months before she filed her complaint).

Based on this analysis, the Court finds that Plaintiff's claims are not tolled due to her minority status at the time the allegations occurred. Accordingly, the Court **GRANTS** the County's Motion as to Plaintiff's state law emotional distress claims, her fifth and sixth causes of action.

**B.    The City's Motion**

1.    Second Claim for Relief – "Violations of Civil Right to Due Process of Law"

In her Second Claim for Relief, Plaintiff alleges Defendants "acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from her parents," and by "removing [her] from her residence without court authority, probable cause, or exigent circumstance, . . . violated the rights secured to [her] by the Fourteenth Amendment of the United States Constitution." Compl. ¶¶ 34-35.

The City argues this claim must be dismissed as to it because Plaintiff has not alleged conduct that "shocks the conscience." City Mot. at 1. It maintains the assistance rendered by Richmond police in removing the Evans children and possibly transporting them to a medical clinic was not arbitrary, malicious, or sadistic and did not "shock the conscience." *Id.* at 3. As such, there can be no liability against the individual officers, and there can therefore be no municipal liability against the City as a municipality. *Id.*

Plaintiff argues the actions taken by the County's social workers and the City's police officers were intrusive and unnecessarily disruptive to her family life. Pl.'s Opp'n to City Mot. at 4. She maintains the City was not authorized to remove her from her home because she was not in immediate need for medical care and not in immediate danger of physical or sexual abuse. *Id.*

Plaintiff further argues she was removed to force her father to accept County-provided parenting services, which he had refused. *Id.* at 5. She contends the City's "removal of her from her home without warrant, reasonable cause, or exigent circumstance was a violation of her constitutional rights to live with her family without governmental interference." *Id.* at 6.

Section 1983 provides a remedy for constitutional violations by persons acting under the color of state law. It provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . . subjects, or causes to be subjected, any citizen of the United States . . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotation and internal marks omitted). To prevail on a § 1983 claim, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. To impose liability against a municipal entity for a constitutional violation under § 1983, a plaintiff must show that an official's action that caused the plaintiff's injury was pursuant "to official municipal policy of some nature." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

"The substantive due process right to family integrity or to familial association is well established." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011). A child has a fundamental liberty interest in the companionship and society of her parent. *Lee v. City of L.A.*, 250 F.3d 668, 685-86 (9th Cir. 2001). Children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their parents through official conduct. *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *Crumpton v. Gates*, 947 F.2d 1418, 1421-24 (9th Cir. 1991). However, "the Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The cognizable level of executive abuse of power is that which "shocks the

conscience" or "violates the decencies of civilized conduct." *Id.* at 846. Mere negligence or liability grounded in tort does not meet the standard for a substantive due process decision. *Id.* at 849.

"In determining whether excessive force shocks the conscience, the court must first ask 'whether the circumstances are such that actual deliberation [by the officer] is practical.'" *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998) (internal quotation marks omitted)). "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013) (citation omitted).

Based on Plaintiff's allegations, it appears that the "deliberate indifference" standard is appropriate here. Plaintiff alleges that the County's social workers investigated suspected child abuse by Plaintiff's father for approximately six months, after which officials of the County's Children and Family Services Bureau decided "to remove [plaintiff and her siblings] from their residence and custody of their natural parents." Compl. ¶¶ 11-17. On February 14, 2002, the City's officers "entered the Evans' residence, searched the entire premises, and removed the four Evans children." *Id.* ¶ 19. Plaintiff was then placed in a foster home. *Id.* ¶ 22. Although discovery may lead to evidence that shows otherwise, these allegations do not give rise to a situation in which an officer faced an escalating situation and was forced to make a snap judgment.

Despite this, the City argues that the Court may determine as a matter of law that Plaintiff's allegations do not rise to the level of shocking the conscience. City Mot. at 1. In support of its argument, the City cites to *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) and *Guzman v. County of Alameda*, 2012 WL 1155535 (N.D. Cal. Mar. 30, 2012). *Id.* However, in both cases, the court addressed this standard at the summary judgment stage rather than on a 12(b)(6) motion. *See Porter*, 546 F.3d at 1137; *Guzman*, 2012 WL 1155535, at *15. At this stage,

14

construing the pleadings in the light most favorite to Plaintiff, the Court finds that she has alleged enough facts to state a claim to relief that is plausible on its face. Plaintiff alleges ten officers who were "large [and] armed" entered her home and removed her from her parents. *Id.* ¶ 19. She alleges she "was subjected to undue emotional distress cause by [their] actions," "completely isolated from family and friends," and "surrounded by foreign and scary experiences which left her emotionally and psychologically disturbed." *Id.* ¶¶ 19, 24. Based on these allegations and her Complaint as a whole, the Court is able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Accordingly, the Court **DENIES** the City's Motion as to Plaintiff's Fourteenth Amendment due process claim.

### 2. Fifth and Sixth Claims for Relief – Emotional Distress

Plaintiff's Complaint alleges two common law tort claims against all Defendants, Intentional Infliction of Emotional Distress (Fifth Claim for Relief) and Negligent Infliction of Emotional Distress (Sixth Claim for Relief). The City argues that these tort claims must be dismissed as to it based on governmental immunity. City Mot. at 4. Plaintiff argues the City may be held liable if its employees acted within the scope of their employment. Pl.'s Opp'n to City Mot. at 6-7.

A public entity is not liable under state law "for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person" except "as otherwise provided by statute." Cal. Gov't Code § 815(a). Thus, Plaintiff cannot bring a claim for direct liability against the City. However, California Government Code section 815.2(a) provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of employment." *Id.* § 815.2(a). Thus, as Plaintiff also brings her claims against the City's employees, the City may still be vicariously liable. *See de Villers v. Cty. of San Diego*, 156 Cal. App. 4th 238, 247 (2007) (noting that, for direct liability to obtain against a governmental agency, there must be a specific statute declaring the entity to be liable or at least creating some specific duty of care; however, vicarious liability is possible under section 815.2); *Rojas v. Sonoma Cty.*, 2011 WL 5024551, at \*6 (N.D. Cal. Oct. 21, 2011) (denying Sonoma County's motion to dismiss intentional and negligent infliction of emotional distress

claims where county could be held liable for vicarious liability); *Hamilton v. Solano Irr. Dist.*, 2013 WL 1499603, at *2 (E.D. Cal. Apr. 11, 2013) (same as to intentional infliction of emotional distress).

Accordingly, the Court construes Plaintiff's claims against the City as claims for vicarious liability, and therefore **DENIES** the City's Motion as to Plaintiff's fifth and sixth claims for relief.

## CONCLUSION

Based on the analysis above, the Court **GRANTS IN PART** and **DENIES IN PART** the County's Motion and **DENIES** the City's Motion.

**IT IS SO ORDERED.**

Dated: July 21, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California