1

2

3

4                         UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    TERALYN RENEA EVANS,                        Case No. 15-cv-01772-MEJ

            Plaintiff,
8                                                **ORDER RE: MOTIONS FOR**
                                                 **SUMMARY JUDGMENT**
9         v.
                                                 Re: Dkt. Nos. 60, 61
10   PRESTON GILMORE, et al.,

            Defendants.
11

12

13                              **INTRODUCTION**

14        Defendants Contra Costa County (the "County") and the City of Richmond (the "City")

15   (collectively, "Defendants") have both filed Motions for Summary Judgment. County Mot., Dkt.

16   No. 60; City Mot., Dkt. No. 61. Pro se Plaintiff Teralyn Renea Evans ("Plaintiff") filed

17   Oppositions (County Opp'n, Dkt. No. 67; City Opp'n, Dkt. No. 68) and Defendants filed Replies

18   (County Reply, Dkt. No. 69; City Reply, Dkt. No. 70). The Court previously found these Motions

19   suitable for disposition without oral argument. Dkt. No. 71. Having considered the parties'

20   positions, the relevant legal authority, and the record in this case, the Court **GRANTS** the City's

21   and County's Motions for the following reasons.

22                               **BACKGROUND**[1]

23        Plaintiff is the eldest child of Charles Evans II and Nicole Evans. Plaintiff's three-year-old

24   cousin came to live with Plaintiff and her family when Plaintiff was three years old. On June 22,

25   2011, a family member[2] filed a report[3] of child abuse with the Los Angeles Police Department, in

26

27   _____

[1] The parties do not dispute the facts underlying this litigation. Indeed, the County merely
presents a "[s]ummary of the Plaintiff's [a]llegations." County Mot. at 3.

28   [2] The County and Plaintiff identify the person who filed the report as Plaintiff's aunt. *See* County

United States District Court
Northern District of California

1   which the family member accused Charles[4] of physically abusing Plaintiff's cousin with a belt.

2   The family member also alleged Nicole generally neglected the children and might have been a

3   victim of abuse herself.

4          The County initiated a child welfare investigation, and the Richmond Police Department

5   ("RPD") launched a criminal abuse investigation.  Between 2001 and 2002, County social workers

6   made several visits to Plaintiff's home.  Charles told County Social Worker Clarence Johnson that

7   he had used a leather belt on Plaintiff's cousin.  At some point,[5] Charles signed a Voluntary

8   Family Maintenance Plan ("VFMP"), in which he agreed to take an anger management class to

9   avoid more intrusive actions by the County.  Five months later, Charles refused to allow County

10  Social Worker Rodney Harvey of the Contra Costa County Children and Family Services Bureau

11  ("CFSB") into his home to allow him to see Plaintiff and her siblings.

12         The County decided to remove Plaintiff and her siblings from their parents' home.  On

13  February 14, 2002 and with the assistance of RPD Sergeant Mark Gagan, Harvey and County

14  Social Worker Stan Cooper went to the Evans home, removed Plaintiff and her siblings, and

15  placed them in foster care.

16         Plaintiff initiated this lawsuit on April 20, 2015.  *See* Compl.  In addition to the County

17  and the City, Plaintiff names as Defendants nine CFSB employees: Preston Gilmore, Savannah

18  McKenzie, Melissa Connelly, Donna Thoreson, Clarence Johnson, Rodney Harvey, Stan Cooper,

19  Linda Ray, Alicia Wood (collectively, the "CFSB Defendants").  *Id.* ¶ 5.  Plaintiff also names as

20  Defendants two RPD officers: Gagan and Greg Gibson (collectively, the "Officer Defendants").

21

22  _____

Mot. at 1; Compl. ¶ 10.  The City identifies this person as the cousin's grandmother.  *See* City

23  Mot. at 2; T. Evans Dep. at 111:15-18, Dkt. No. 66 (Plaintiff's cousin's "grandma -- his
grandmother and her friend visiting us.  Them filing the complaint or – I'm assuming that that

24  happened first, and then they came and got him." (errors in original)).  It is unclear whether
Plaintiff's aunt and the cousin's grandmother are the same person.

25  [3] The parties did not attach the report to their pleadings.

26
[4] As the Plaintiff and her parents share the same last name, for clarity's sake, the Court refers to

27  Plaintiff's parents by their first names.

28  [5] Plaintiff's Complaint states Charles signed the VFMP in August 2001; the City asserts it was in
August 2002.  *See* Compl. ¶ 14; City Mot. at 3.  The distinction is immaterial.

1   *Id.* ¶ 7.  Plaintiff asserts claims against the CFSB and the Officer Defendants in their individual

2   and official capacities.  *Id.* ¶¶ 5, 7.

3      Plaintiff asserts six claims for (1) "violation of civil right to security in persons and

4   houses" under 42 U.S.C. § 1983; (2) "violations of civil right to due process of law" under 42

5   U.S.C. § 1983; (3) "violations of civil right to equal rights under the law" under 42 U.S.C. § 1981;

6   (4) "conspiracy to interfere with civil rights" under 42 U.S.C. § 1985; (5) intentional infliction of

7   emotional distress; and (6) negligent infliction of emotional distress.  Compl. ¶¶ 31-44.  The Court

8   previously dismissed the intentional and negligent infliction of emotional distress claims against

9   the County, but allowed them to stand against the City.  Order re: Mots. to Dismiss at 9-12, 15-16,

10   Dkt. No 33.

## LEGAL STANDARD

12      Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

13   that there is "no genuine dispute as to any material fact and [that] the movant is entitled to

14   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment

15   bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that

16   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

17   317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v.*

18   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

19   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

20      Where the moving party will have the burden of proof on an issue at trial, it must

21   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

22   party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

23   the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

24   pointing out to the district court that there is an absence of evidence to support the nonmoving

25   party's case.  *Celotex*, 477 U.S. at 324-25.

26      If the moving party meets its initial burden, the opposing party must then set forth specific

27   facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ.

28   P. 56(c)(1); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most

United States District Court
Northern District of California

3

1    favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir.

2    2004).  However, it is not the task of the Court to scour the record in search of a genuine issue of

3    triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court "rel[ies] on the

4    nonmoving party to identify with reasonable particularity the evidence that precludes summary

5    judgment."  *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

6    Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine

7    issue of fact, where the evidence is not set forth in the opposing papers with adequate references

8    so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031

9    (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party is entitled

10   to a judgment as a matter of law."  *Celotex*, 477 U.S. at 322 (internal quotations omitted).

11           Additionally, at the summary judgment stage, parties must set out facts they will be able to

12   prove at trial.  At this stage, courts "do not focus on the admissibility of the evidence's form . . . .

13   [but] instead focus on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036

14   (9th Cir. 2003) (citation omitted).  "While the evidence presented at the summary judgment stage

15   does not yet need to be in a form that would be admissible at trial, the proponent must set out facts

16   that it will be able to prove through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d

17   966, 973 (9th Cir. 2010) (citations omitted).  Accordingly, "[t]o survive summary judgment, a

18   party does not necessarily have to produce evidence in a form that would be admissible at trial, as

19   long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."  *Block v. City

20   of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Celotex*, 477 U.S. at 324 (a party need not "produce

21   evidence in a form that would be admissible at trial in order to avoid summary judgment."); *see*

22   *also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must

23   be made on personal knowledge, set out facts that would be admissible in evidence, and show that

24   the affiant or declarant is competent to testify on the matters stated.").

**EVIDENTIARY OBJECTIONS**

26           Before turning to the parties' substantive arguments, the Court addresses the City's

27   objections to the Declaration of Charles Evans II ("Evans Declaration").  *See* Evans City Decl.,

28

United States District Court
Northern District of California

Dkt. Nos. 67-1 & 68-1.[6]  The City objects to the Evans Declaration on the basis that Charles "fails to authenticate or otherwise establish the admissibility of these documents."  City Reply at 2.

In his Declaration, Charles states "I have personal knowledge of each matter stated herein for the following reasons: I am a non-party witness for the Plaintiff in this action."  Evans Decl. ¶ 1.  He offers no facts, but simply attaches ten exhibits, which purport to be "true and correct cop[ies] of" Contra Costa County Children and Family Services Bureau logs of contact, fax cover sheet, and a "case disposition outline"; City of Richmond Police Department Investigative Bureau Supplements, Police Incident Printout, and Memorandum; and a Los Angeles Police Department follow-up investigation.  *See id.* ¶¶ 2-11 & Exs. A-J.

Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  Based on his Declaration, there is no indication Charles is competent to testify as to the authenticity of the documents he offers.  Charles does not explain how being a non-party witness for Plaintiff lends him personal knowledge of the attached exhibits, which all appear to be documents created by the CFSB, the Richmond Police Department, or the Los Angeles Police Department.  He does not state that he created these documents, does not identify who did, and does not state that he witnessed the documents' creation.  Nor does Charles explain how or when he obtained them.  Moreover, it is unclear at this point whether the defects in Evans Declaration could be cured at trial; the Court is unaware of any facts that suggest Charles could authenticate the documents or lay foundation for them.

---

[6] Plaintiff twice filed the Evans Declaration, once with her Opposition to the County's Motion and again with her Opposition to the City's Motion.  *See* Dkt. Nos. 67-1 & 68-1.  The Court's citations to the Evans Declaration refer to both Docket Nos. 67-1 and 68-1.

In addition, the Court notes only the City objects to the Evans Declaration; the County does not.  *See* County Reply; *see also* Civ. L.R. 7-3(c) ("Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum.").

United States District Court
Northern District of California

1    Nevertheless, the Ninth Circuit has held that where "a pro se plaintiff, ignorant of the law,

2    offer[s] crucial facts as soon as he understood what was necessary to prevent summary judgment

3    against him—it would have been an abuse of discretion for the district court not to consider the

4    evidence." *Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004).  Accordingly, in an abundance of

5    caution, the Court will consider the Evans Declaration and attachments thereto.

6                                                      **DISCUSSION**

7    **A.       Service on the CFSB and the Officer Defendants**

8            The County argues summary judgment is proper given that Plaintiff has failed to serve the

9    CFSB Defendants and cannot show how those Defendants are personally linked to any

10   constitutional violations.

11           "An elementary and fundamental requirement of due process in any proceeding which is to

12   be accorded finality is notice reasonably calculated, under all the circumstances, to apprise

13   interested parties of the pendency of the action and afford them an opportunity to present their

14   objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  A plaintiff

15   must serve an individual defendant by

16           (A) delivering a copy of the summons and of the complaint to the
             individual personally; (B) leaving a copy of each at the individual's
17           dwelling or usual place of abode with someone of suitable age and
             discretion who resides there; or (C) delivering a copy of each to an
18           agent authorized by appointment or by law to receive service of
             process.
19

20   Fed. R. Civ. P. 4(e)(2).  Alternatively, a plaintiff may "follow[] state law for serving a summons in

21   an action brought in courts of general jurisdiction in the state where the district court is located or

22   where service is made."  Fed. R. Civ. P. 4(e)(1).  California law permits both personal service and,

23   "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally

24   delivered to the person[,]" substitute service:

25

26           a summons may be served by leaving a copy of the summons and
             complaint at the person's dwelling house, usual place of abode,
27           usual place of business, or usual mailing address other than a United
             States Postal Service post office box, in the presence of a competent
28           member of the household or a person apparently in charge of his or
             her office, place of business, or usual mailing address other than a

United States District Court
Northern District of California

United States District Court
Northern District of California

> United States Postal Service post office box, at least 18 years of age,
> who shall be informed of the contents thereof, and by thereafter
> mailing a copy of the summons and of the complaint by first-class
> mail, postage prepaid to the person to be served at the place where a
> copy of the summons and complaint were left.  Service of a
> summons in this manner is deemed complete on the 10th day after
> the mailing.

Cal. Civ. Proc. Code § 415.20(a)-(b).

To serve a state or local government entity, a plaintiff must "(A) deliver[] a copy of the summons and of the complaint to its chief executive officer; or (B) serv[e] a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2).  In California, "[a] summons may be served on a public entity by delivering a copy of the summons and of the complaint to the clerk, secretary, president, presiding officer, or other head of its governing body." Cal. Civ. Proc. Code § 416.50(b).  A plaintiff must serve the defendant(s) within 90 days of filing the complaint; if she fails to do so, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

It is undisputed that Plaintiff served the County and the City.  But service on the County and the City is insufficient to effect service on the CFSB Defendants or the Officer Defendants, respectively.  *See Grinols v. Electoral Coll.*, 2013 WL 950011, at \*2 (E.D. Cal. Mar. 11, 2013) ("Case law makes it clear that when a plaintiff proceeds against an agent of the government in his or her individual capacity, a plaintiff must effect personal service on that agent under Rule 4(e); otherwise, the Court has no jurisdiction over the defendant." (collecting cases)).

The County argues there is no evidence Plaintiff otherwise served the CFSB Defendants, nor has a CFSB Defendant appeared or filed an answer in this action.  Indeed, the record shows none of the CFSB Defendants has been served, entered an appearance, or answered Plaintiff's Complaint.  Plaintiff contends she "served and successfully executed a Court Summons by U.S. Marshall Service . . . , to Defendant Contra Costa County and nine named employees on June 3, 2015[.]" Opp'n at 6 (citing Summons).  But the Summons names only the County and the City; it makes no reference to any of the CFSB Defendants or, for that matter, the Officer Defendants, who have also not appeared or answered the Complaint.  *See* Summons, Dkt. 17.  Indeed, Plaintiff

United States District Court
Northern District of California

1    only listed the County and the City as Defendants in response to the Court's letter requesting she

2    identify the addresses of "ALL the defendant(s)" in order "[t]o insure that proper service is made."

3    *See* Address Ltr. Returned-Only Two Defendants Listed, Dkt. No. 16.  Moreover, while the record

4    shows that summonses served on the County and the City were returned executed (*see* Dkt. Nos.

5    18-19), there is no evidence that summonses for the CFSB or Officer Defendants have been issued

6    or executed.  Plaintiff offers no other evidence to show she effectuated service on the CFSB and

7    Officer Defendants.

8            The 90-day deadline to effect service passed well over a year ago.  *See* Fed. R. Civ. P.

9    4(m).  The City has repeatedly notified Plaintiff of the lack of service.  *See* Mot. to Dismiss at 1

10   ("Richmond police officers [Gagan and Gibson] have not been served"), Dkt. No. 22; Aug. 13,

11   2015 Joint CMC Stmt. ¶¶ 1, 6 ("[O]nly the City of Richmond and Contra Costa County have been

12   served.  None of the individually named Defendants have been served."), Dkt. No. 40; City Mot.

13   at 6-7 ("No summons was issued for and no service was made on [Gagan] or [Gibson].  Nor did

14   they appear at any time in this action").  Plaintiff has failed to rebut Defendants' representations.

15   **B.      Claims Under 42 U.S.C. § 1983**

16           Pursuant to 42 U.S.C. § 1983, a plaintiff may assert a cause of action against any person

17   who, under color of state law, deprives another of any rights, privileges, or immunities secured by

18   the Constitution and laws of the United States.  Section 1983 is not itself a source of substantive

19   rights, but merely provides a vehicle for a plaintiff to bring federal statutory or constitutional

20   challenges to actions by state and local officials.  *Graham v. Connor*, 490 U.S. 386, 393-94

21   (1989); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  A local government entity

22   "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell*,

23   436 U.S. at 694.  Instead, a municipality is liable only if the individual can establish that the

24   municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the

25   constitutional violation he [or she] suffered."  *Id.* at 694-95; *Whitaker v. Garcetti*, 486 F.3d 572,

26   581 (9th Cir. 2007); *Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007).  To hold a public

27   entity liable, a plaintiff must demonstrate that the unlawful governmental action was part of the

28   public entity's policy or custom, and that there is a nexus between the specific policy or custom

1    and the plaintiff's injury.  *Monell*, 436 U.S. at 690-92, 694-95.

2           The County and the City argue summary judgment is proper as to Plaintiff's § 1983 claims

3    because she fails to establish an underlying constitutional violation that gives rise to *Monell*

4    liability.  County Mot. at 14-17; City Mot. at 7.  "[M]unicipalities cannot be held liable when the

5    individual police officer has inflicted no constitutional injury."  *Yousefian v. City of Glendale*, 779

6    F.3d 1010, 1016 (9th Cir.), *cert. denied sub nom. Yousefian v. City of Glendale, Cal.*, 136 S. Ct.

7    135 (2015); *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) ("Neither a

8    municipality nor a supervisor . . . can be held liable under § 1983 where no injury or constitutional

9    violation has occurred.").  Plaintiff has not set forth evidence that either the CFSB or the Officer

10   Defendants violated her constitutional rights.

11          As to the County, Plaintiff argues contends she "has named nine County employees who

12   acted under the color of state law, and . . . has presented specific factual evidence linking the

13   actions of the named [CFSB] Defendants to the constitutional injuries suffered by the Plaintiff."

14   County Opp'n at 7.  She therefore avers she "has no need to amend her complaint as the named

15   and served County Defendants argue.  All County Defendants have been accurately named in the

16   original complaint and linked to specific factual actions taken under the color of state law pursuant

17   to County policy and procedures."  *Id.*

18          As the nonmoving party, Plaintiff must identify evidence that precludes summary

19   judgment.  *See Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("Because a

20   district court has no independent duty 'to scour the record in search of a genuine issue of triable

21   fact, and may 'rely on the nonmoving party to identify with reasonable particularity the evidence

22   that precludes summary judgment,' we emphasize that the district court in this case was under no

23   obligation to undertake a cumbersome review of the record on the [plaintiffs'] behalf."  (quoting

24   *Keenan*, 91 F.3d at 1279)).  Merely relying on the allegations set forth in her Complaint does not

25   suffice.  Plaintiff may have made specific *allegations* against the CFSB Defendants, but she does

26   not offer any *evidence* to support those allegations.  Plaintiff's evidence consists only of the

27   exhibits attached to the Evans Declaration, which purport to show various Children and Family

28   Services Bureau and City of Richmond Police Department notes and reports concerning

United States District Court
Northern District of California

9

1    interactions with Charles.  *See* Evans Decl., Exs. A-J.  But Plaintiff does not point to any facts

2    within these exhibits that suggest the County maintained a policy or custom that caused her

3    injuries.  *See* County Opp'n.  It is thus unclear how these documents establish a policy or custom

4    of the County.

5          Similarly, there are no facts that create a triable issue that the Officer Defendants violated

6    her constitutional rights, precluding Plaintiff's ability to hold the City accountable under a theory

7    of municipal liability.  Plaintiff argues *Monell* liability exists as to the City because "[b]y placing

8    the Plaintiff in custody pursuant to WIC 305 and delivering her to [the] County . . . , [the] City . . .

9    created a special relationship as her temporary guardian under the color of state law."[7]  City Opp'n

10   at 7 (citing *Davidson v. City of Westminster*, 32 Cal. 3d 197 (1982)).  But a "special relationship"

11   does not establish municipal liability; Plaintiff must identify facts that show a triable issue of fact

12   exists as to the remaining elements of her § 1983 claims, including the existence of a policy or

13   custom.

14          Plaintiff's reliance on *Davidson*, a factually inapposite case, is misplaced.  The *Davidson*

15   plaintiff did not assert a § 1983 claim or *Monell* liability.  Instead, that plaintiff brought claims of

16   negligence and intentional infliction of emotional distress against police officers and a city for the

17   officers' alleged failure to warn the plaintiff about a man who eventually stabbed her.  32 Cal. 3d

18   at 201.  The California Supreme Court held that the mere fact that the plaintiff may have been "a

19   reasonably foreseeable victim . . . does not suffice to establish a special relationship with the

20   officers[.]"  *Id.* at 209.  The *Davidson* case does not advance Plaintiff's claims.

21          Moreover, the City points out that Plaintiff testified that she did not claim the City

22   maintained policies, practices, or procedures that caused the alleged violation of her constitutional

23   rights.  City Mot. at 7; T. Evans Dep. at 222:15-20 ("Q. [] You're not claiming that the City of

24   Richmond's policies, practices and procedures for [child endangerment and abuse] cases resulted

25   in the violation of your rights?  A. Correct.").  Plaintiff explains this "testimony was based on her

26

27   _____

28   [7] Presumably, "WIC 305" refers to California Welfare and Institutions Code section 305, which
     sets forth the situations in which a "peace officer may, without a warrant, take into temporary
     custody a minor[.]"

United States District Court
Northern District of California

1    personal recollection of the information requested during her deposition without the aid of

2    immediate reference or prior comprehensive legal analysis of recent discovery documents."  City

3    Opp'n at 7.  She argues her deposition testimony "does not negate improved answers provided in

4    her pro per capacity with the benefit of evidentiary review and legal research presented in this

5    response."  *Id.*  But even in her Opposition—for which Plaintiff had the opportunity to prepare and

6    conduct research—Plaintiff fails to offer evidence to contradict her prior testimony.  Plaintiff

7    offers the exhibits to the Evans Declaration, but she does not explain how those documents

8    establish the City's liability.  The record is thus absent of facts that show the existence of a City

9    policy, practice, or procedure that resulted in a violation of Plaintiff's constitutional rights.

10        As Plaintiff fails to offer any evidence of *Monell* liability, the Court GRANTS summary

11   judgment in favor of the County and the City on Plaintiff's § 1983 claims.

12   **C.**     **Intentional Infliction of Emotional Distress**

13        To prevail on a claim of intentional infliction of emotional distress, a plaintiff "must prove

14   '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

15   disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

16   extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

17   defendant's outrageous conduct.'"  *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 960 (9th Cir.

18   2013) (quoting *Davidson*, 32 Cal. 3d at 209).

19        The City argues there is no evidence that the Officer Defendants engaged in extreme or

20   outrageous conduct.  City Mot. at 12-13.  "A defendant's conduct is 'outrageous' when it is so

21   'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Lawler v.*

22   *Montblanc N. -Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal.

23   4th 1035, 1051 (2009)).  "Whether a defendant's conduct can reasonably be found to be

24   outrageous is a question of law that must initially be determined by the court; if reasonable

25   persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous."

26   *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007).

27        Plaintiff does not address the City's arguments about extreme and outrageous conduct in

28   her Opposition.  The record also does not contain facts that describe the Officer Defendants'

11

1    conduct, let alone show any extreme and outrageous conduct by those Defendants.  At most, there

2    is evidence that "Mark Gagan . . . was there when [Plaintiff] was removed."  T. Evans Dep. at

3    220:22-23.  But Plaintiffs does not explain what Gagan did or how he was involved in the removal

4    to illustrate his actions were extreme or outrageous.  *See id.* at 220:22-221:3 ("And as someone

5    who had a certain . . . position of authority, I believe [Gagan]'s just as responsible as the social

6    workers who removed us and the people who told those social workers to remove us . . . because

7    nobody had a warrant.").  Plaintiff also fails to explain how Greg Gibson was involved.  *See id.* at

8    219:18-220:7 (testifying that Gibson's omission from paragraph 19 of Plaintiff's Complaint

9    concerning of her removal from her home was "from [her] parent's complaint" and she "believe[d]

10   that would have been intentional[,]" nor did she have any information that Gibson was present at

11   the time of her removal).

12         Because Plaintiff fails to set forth facts that the Officer Defendants engaged in extreme or

13   outrageous conduct, a reasonable jury could not find the City intentionally inflicted emotional

14   distress.  As such, the Court GRANTS the City's Motion for Summary Judgment on this claim.

15   **D.      Negligent Infliction of Emotional Distress**

16         "Negligent infliction of emotional distress is a form of the tort of negligence, to which the

17   elements of duty, breach of duty, causation and damages apply."  *Huggins v. Longs Drug Stores*

18   *Cal., Inc.*, 6 Cal. 4th 124, 129 (1993); *see Spates v. Dameron Hosp. Ass'n*, 114 Cal. App. 4th 208,

19   213 (2003) ("The negligent causing of emotional distress is not an independent tort, but the tort of

20   negligence.  The traditional elements of duty, breach of duty, causation, and damages apply.

21   Whether a defendant owes a duty of care is a question of law." (internal quotation marks and edits

22   omitted)).  There are "at least two variants of the theory . . . : 'bystander' cases and 'direct victim'

23   cases."  *Wooden v. Raveling*, 61 Cal. App. 4th 1035, 1037 (1998).  "'Bystander' claims are

24   typically based on breach of a duty owed to the public in general . . . , whereas a right to recover

25   for emotional distress as a 'direct victim' arises from the breach of a duty that is assumed by the

26   defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's

27   preexisting relationship with the plaintiff [.]"  *Moon v. Guardian Postacute Servs., Inc.*, 95 Cal.

28   App. 4th 1005, 1009 (2002) (internal quotation marks omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The City argues summary judgment is proper as to Plaintiff's negligent infliction of

2    emotional distress claims because the Officer Defendants did not owe Plaintiff a duty of care.

3    City Mot. at 10-12.  As discussed above, nothing in the record suggests the Officer Defendants

4    were directly involved in Plaintiff's removal from her home.  Plaintiff testified that she had no

5    knowledge that any RPD officers ordered Plaintiff's removal from her home or drove her away.

6    T. Evans Dep. at 218:23-219:8.  Nor does Plaintiff offer evidence that the Officer Defendants were

7    present during her removal or were anything more than bystanders such that they could inflict

8    emotional distress upon her.

9    The City further contends the Officer Defendants did not owe Plaintiff a duty of care.  City

10    Mot. at 10-12.  The City argues "strong public policy argues against imposing a duty on police to

11    prevent county social workers from removing a child from the parents under the authority granted

12    in the Welfare and Institutions Code." *Id.* at 11.  Namely, "social workers possess the requisite

13    training and experience to evaluate the factors that create a threat to the child" and "imposing a

14    duty on police to evaluate the merits of an emergency removal would in effect require police

15    assisting in a removal to conduct their own duplicative investigation or risk being held liable for

16    the social worker's errors, if any." *Id.*  Plaintiff provides no authority supporting her claim that

17    the Officer Defendants owed her a duty of care. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal.

18    4th 965, 984 (1993) ("There the court held that there is no duty to avoid negligently causing

19    emotional distress to another, and that damages for emotional distress are recoverable only if the

20    defendant has breached some other duty to the plaintiff.").  To the extent she relies on *Davidson*,

21    that case is again inapposite: the California Supreme Court held the officers did not owe the

22    plaintiff a duty of care.  32 Cal. 3d at 209.

## CONCLUSION

24    Based on the analysis above, the Court hereby **GRANTS** the County's and the City's

25    Motions for Summary Judgment.  The Court will issue a separate judgment as to the County and

26    the City.

27    In addition, the Court **ORDERS** Plaintiff to show cause why it should not dismiss this

28    action as to the CFSB and the Officer Defendants for lack of prosecution pursuant to Rule 4(m).

1   By **March 9, 2017**, Plaintiff shall file a declaration explaining the basis for her representation that

2   she did serve these Defendants no later than 30 days from the date of this Order.  The Court warns

3   Plaintiff that a failure to timely respond shall result in dismissal of the CFSB and the Officer

4   Defendants with prejudice.

5

6        **IT IS SO ORDERED.**

7

8   Dated: February 23, 2017

9   _____

10                              MARIA-ELENA JAMES
                                United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

14